JjDREW, J.
Central Oil & Supply Corp. appeals partial judgments in favor of Caldwell Wholesale Supply, Inc. rendered April 2, 1998, following a bench trial begun in September 1996 and concluded in January 1998. Because we conclude that the trial court erred in certifying the partial judgments for immediate appeal, we remand these consolidated matters to the trial court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In a suit to recover monies owed (No. 31,573-CA), Caldwell Wholesale Company, Inc. named as defendants Central Oil & Supply Corp. d/b/a Kwik Trip; Robert E Powell d/b/a Kwik Trip and C-Stores Services, Inc. d/b/a Kwik Trip. Caldwell is a wholesale supplier of tobacco, drugs, candy and related items to convenience stores across North Louisiana. Central supplies petroleum products to convenience stores. The principal owner and CEO of Central is Hardeman Cordell. Robert Powell and his wife did business as C-Stores and operated convenience stores.
In its petition, Caldwell alleged that from February 1, 1991 through May 31, 1991 Caldwell supplied inventory to several Kwik Trips on a credit basis. About February 1, 1991, Caldwell learned that the operation and/or ownership of the Kwik Trips was to be transferred from Powell and/or C-Stores to Central which was to be “owner and/or operator.” The transfer was not disclosed to defendants’ other trade creditors. Central was “taking over” the Kwik Trip locations; Central’s employees would be receipting for and selling the goods provided by Caldwell after February 1, 1991. Caldwell was instructed to submit statements for products supplied to the stores to Powell and/or C-Stores just as Caldwell had done prior to February 1, 1991. Caldwell continued supplying the Kwik Trips and billed Powell and/or C-Stores. Powell and/or C-Stores began systematically retiring a sizeable pre-February 1, 1991 debt to Caldwell according | ?to an agreement with Caldwell’s representative. Caldwell was assured that Central was making arrangements to satisfy the post-February 1, 1991 debt for purchases from Caldwell. Caldwell asserted that the defendants’ actions in failing to fully disclose the change in the stores’ operation and/or ownership, as evidenced by their failure to provide different billing information, constituted an unfair trade practice which allowed Central to unjustly enrich itself at Caldwell’s expense. Central sold Caldwell’s goods at a profit and attempted to avoid responsibility for payment while knowing that Powell and/or C-Stores was insolvent and unable to pay for the goods for which they were billed.
In the second suit (No. 31,574-CA), Caldwell sued Robert E. Powell d/b/a Kwik Trip and C-Stores Services, Inc. d/b/a Kwik Trip along with Hardeman Cordell and Susan Sherrouse Cordell. Caldwell alleged that in January 1991, Powell transferred stock, inventory and fixtures at various Kwik Trip locations to C-Stores and Cordell. Caldwell further *307 alleged that the transfers in bulk did not comply with the bulk sales law so that C-Stores and Cordell were liable to Caldwell for the fair value of the property transferred. The two actions were consolidated in an order signed November 20, 1992.
The trial court dismissed the claims based upon unfair trade practices. In its April 2 judgment, the trial court made seventeen findings of fact and three conclusions of law (See Appendix A). The judgment held Central was liable to Caldwell for the balance due on the accounts, $319,008.08. The trial court did not articulate the legal theory on which the award was based. In addition to assessing Central with legal interest and costs, the trial court dismissed Caldwell’s claims against Hardeman and Susan Cordell, individually. A second April 2, 1998 judgment (See Appendix B) denied or declared moot exceptions raised to Caldwell’s claims.
| ?,Because no judgment has been entered on the claims against Robert Powell and C-Stores, the judgments on appeal are partial judgments appealable only pursuant to the provisions of La. C.C.P. art. 1915. See Carroll v. State Farm Fire & Cas., 31652 (La.App.2d Cir.8/6/98), 715 So.2d 771. As amended by Act 483 of 1997, La. C.C.P. art.1915 now defines the procedure necessary to appeal a judgment which does not dispose of the entire merits of an action:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or in-tervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, including a summary judgment granted pursuant to Article 966(E).
. (4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury-
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, theories, or parties, whether in an original demand, re-conventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the' rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
|4C. If an appeal is taken from any judgment rendered under the provisions of this Article, the trial court shall retain jurisdiction to adjudicate the remaining issues in the case.
On January 15, 1999, this court issued an order directing that the parties show cause why the appeal should not be dismissed because it was taken from an un- *308 certified partial judgment; i.e, a partial judgment not designated by the trial court as a final judgment after an express determination that there is no just reason for delay of an immediate appeal.
On January 20, 1999, this court received an amended judgment from the trial court which explained that neither Robert E. Powell nor C-Stores Services, Inc. answered plaintiffs petition and further explained that preliminary defaults were entered against those parties on September 6, 1996. The trial court understood that trial on the merits was to proceed only against those parties who had filed responsive pleadings and asserted defenses to plaintiffs claims. A confirmation of default which was to occur later was not addressed, signed or filed into the record and judgments were, entered only as to the remaining defendants.
Citing Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360 (3d Cir. 1975) and Banks v. State Farm Insurance Company, 30,868 (La.App.2d Cir.3/5/98), 708 So.2d 523, the trial court stated that the judgment in favor of Caldwell and against Central and which dismissed plaintiffs claims against Hardeman and Susan Cordell constituted. a final judgment for purposes of immediate appeal under La. C.C.P. art.1915. Pertinent factors cited by the trial court were: (1) a final disposition of the trial court’s ruling would put to rest all disputes between these parties arising out of these facts; (2) the judgment as to these parties would not be affected by any subsequent confirmation of default as to Powell or C-Stores; (3) there was no counterclaim for setoff and (4) fairness to |Kthe parties and judicial economy supported the conclusion that there is no just reason for delaying appellate review of these facts.

DISCUSSION

The 1997 amendments to La. C.C.P. art.1915 were patterned after the provisions of Rule 54 of the Federal Rules of Civil Procedure. Banks, supra. Although federal jurisprudence involving Rule 54 is not binding on us, that jurisprudence is persuasive in construing our state legislation. Berman v. De Chazal, 98-81 (La.App. 5th Cir.5/27/98), 717 So.2d 658.
In Curtiss-Wright Corporation v. General Electric Company, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the United States Supreme Court stated that a district court’s decision to certify under Rule 54(b) was, with good reason, left to the sound judicial discretion of the district court, but, with equally good reason, any abuse of that discretion remains reviewable by the appellate court. The standard against which a district court’s exercise of discretion is to be judged is the “interest of sound judicial administration.” While the proper role of the appellate court is not to reweigh the equities or reassess the facts, the appellate court must make sure that the conclusions derived from the trial court’s weighings and assessments are juridically sound and supported by the record. By way of further explanation, the court stated:
There are thus two aspects to the proper function of a reviewing court in Rule 54(b) cases. The court of appeals must, of course, scrutinize the district court’s evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is “the one most likely to be familiar with the case and with any justifiable reasons for delay.” 100 S.Ct. at 1466.
The court observed that in deciding whether there are no just reasons to delay an appeal, a district court must take into account judicial administrative interests as | fiwell as the equities involved. Consideration of the former is necessary to assure that the rule effectively preserves the historic federal policy against piecemeal appeals. , Curtiss-Wright, supra.
*309 Both Louisiana courts and federal courts have historic policies against piecemeal adjudications and appeals. Banks, supra; Berman, supra. In Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993), the Louisiana Supreme Court stated that if all judgments that adjudicated fewer than all claims or defenses, or adjudicated the claims or defenses of one or more but less than all the parties were immediately appealable, “there would be intolerable problems of multiple appeals and piecemeal litigation.” Similarly, in Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d 962 (9th Cir.1981), the federal appellate court stated that judgments under Rule 54(b) must be reserved “for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressuring needs of the litigants for an early and separate judgment as to some claims or parties.” See also Hogan v. Consolidated Rail Corporation, 961 F.2d 1021 (2d Cir.1992), in which the court observed that where a complaint is dismissed as to one defendant, but not others, the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undis-missed defendants.
The instant case presents a matter in which the plaintiffs complaint was dismissed as to some defendants but not others, and in which it appears that the same or closely related issues are unresolved against the undismissed defendants. Under the legal analysis discussed above, we conclude that while a sufficiently important reason for certification still might exist in such matters, as where appellate resolution of the certified claims would bring about a settlement of the 17remaining claims, the district court must clearly articulate such an important reason. Furthermore, we must carefully scrutinize the district court’s evaluation to make sure that court’s conclusions are juridically sound and supported by the record so as to preserve our longstanding policy against piecemeal appeals. We now turn to an examination of the factors given by the trial court as warranting an immediate appeal.
The first factor cited is that a final disposition of the trial court’s ruling as to some of the defendants “would put to rest all disputes between these parties arising out of these facts.” This would apply in virtually all cases in which an appeal is taken from a partial judgment rendered against some parties, but not others. Such a finding makes no determination whatsoever of whether the claims under review are separable from the unadjudicated claims, or whether the nature of the claims determined is such that this court would not have to decide the same issues more than once if there were subsequent appeals.
The second factor given by the trial court is that the judgment as to the dismissed parties would not be affected by any subsequent confirmation of default as to Powell or C-Stores, Inc. This factor suffers from the same problems as the first. While it is true that the judgment on appeal, once it became final and definitive, would not be (and could not be) affected by any subsequent confirmation of default against the other defendants, this naked conclusion does not indicate what effect finality of the judgment on appeal might have on any subsequent judgments as to Powell or C-Stores. Nor did the trial court enlighten us as to either the legal relationships among the parties or the degree of relationships between the adjudicated and unadjudicated claims. We note here that, at oral argument on our rule to show cause, counsel for plaintiff was unwilling to dismiss plaintiffs claims against the remaining defendants, was | sunwilling to join with appellants to seek immediate review of these partial judgments, and expressed agreement with this Court’s concerns over the posture of this case. We also observe that there is no *310 guarantee that default judgments will be confirmed against the remaining defendants; they could answer the plaintiffs claims at any time prior to confirmation. Furthermore, any judgment rendered against the remaining defendants, default or otherwise, would be subject to yet another appeal that would require a future appellate panel to review the record in this case and consider the same or similar facts and presumably the same or similar issues. Under these circumstances, we find the trial court’s second factor to be neither juridically sound nor supported by the record.
The third factor cited by the trial court is the absence of a counterclaim for setoff. While the presence of a counterclaim could weigh against certification, the absence of such a counterclaim is of negligible weight in support of certification in this case. The absence of a counterclaim for setoff, by itself, tells us very little about either the relationship between the dismissed and undismissed parties or the relationship between the adjudicated and unadjudicated claims.
Finally, the court’s fourth factor is stated as “fairness to the parties and judicial economy ... particularly in light of the fact that this matter was timely appealed, has been lodged in the court of appeal, and is scheduled for oral argument on Wednesday, January 20, 1999.” This factor does not assist this court, but simply restates the overall considerations for certification (judicial administrative interests as well as the equities involved). Nor was this matter “timely appealed” initially. Until the trial court certified the partial judgment, there was no final judgment for purpose of an appeal. Instead, the appeal was premature, and that prematurity only was cured retrospectively by the subsequent certification. From this vantage point, we conclude that neither fairness to the 1 flparties nor judicial efficiency will be served by an immediate appeal of this partial judgment, since an appeal now will result in piecemeal litigation.

CONCLUSION

For the reasons set forth above, we conclude that under these unique facts, the learned trial court abused its discretion in certifying the partial judgments in these consolidated appeals in which the relationship between the adjudicated and the unadjudicated claims appear so intertwined as to be virtually symbiotic. After scrutinizing the district court’s reasons for certification, we conclude that the “interest of sound judicial administration” is not promoted, and we find the conclusions juridically unsound and unsupported by the record. Therefore, the appeal in these matters is dismissed and the actions are remanded to the trial court for further proceedings. Upon entry of a final judgment which disposes of all claims pending in the trial court among all the parties involved, all parties will have an opportunity for a complete review by this court in a single comprehensive review serving the interest of sound judicial administration and avoiding pieceméal appeals.
CERTIFICATION REVERSED; APPEALS DISMISSED WITHOUT PREJUDICE; CASE REMANDED FOR FURTHER PROCEEDINGS.
*311 [[Image here]]
*312 [[Image here]]
*313 [[Image here]]
*314 [[Image here]]
*315 [[Image here]]