738 So.2d 27 (1999)
SUCCESSION OF Vera Moore GRIMMETT, Plaintiff-Appellant.
Lucy B. Hunter, Plaintiff-Appellant,
v.
Tensas Nursing Home, et al., Defendant-Appellee.
Jeffrey Lane Shoemaker, et al., Plaintiff-Appellant,
v.
Antonino Giacalone and Shooter's Saloon, Inc., Defendant-Appellee.
Nos. 31,975-CA, 32,217-CA and 32,364-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 1999.
*28 Jimmy D. Long, Jr., Natchitoches, Hunter, Scott, Blue & Johnson by Willie Hunter, Jr., Monroe, Joey W. Hendrix, Shreveport, Counsel for Appellants.
Charles B. Bice, Winnfield, Roos & Roos by Armand L. Roos, Shreveport, Hayes, Harkey, Smith & Cascio by Harry Moffett, IV, Thomas M. Hayes, III, Monroe, Davenport, Files & Kelly by Ramsey L. Ogg, Mike C. Sanders, Monroe, Hudson, Potts & Bernstein by Jan P. Christianson, Monroe, Wiener, Weiss & Madison by Geoffrey D. Westmoreland, Shreveport, Counsel for Appellees.
Before NORRIS, C.J., and BROWN, WILLIAMS, STEWART, GASKINS, CARAWAY, PEATROSS, KOSTELKA and DREW, JJ., en banc.
EN BANC.
These three appeals, which have been consolidated on the court's own motion, involve partial judgments that have not been designated as final judgments by the trial court after an express determination that there is no just reason for delay of an immediate appeal. Although the exact circumstances in each case differ, the cases present problems typical of those this court continues to confront frequently since the July 1997 amendments to La. C.C.P. art.1915. Despite more than a year and a half having elapsed, far too many appeals from partial judgments lack the proper determination and designation necessary for an immediately appealable partial final judgment. Furthermore, as discussed more fully below, there is disagreement among the circuits concerning the procedures and policies to utilize in dealing with appeals of partial judgments.
In Jackson v. America's Favorite Chicken Co., 98-0605 (La.App. 4 Cir. 2/3/99), 729 So.2d 1060, the court recognized the need for consistency in that circuit's rulings on partial judgments, and, en banc, adopted a procedure for dealing with flawed partial judgment dispositions. Similarly, in order to clearly set forth this circuit's polices and procedures, we now revisit our decisions on this subject, and announce a policy change for the future. For the reasons set forth below, and in keeping with the policies discussed herein, the appeals in the above captioned matters are dismissed without prejudice.
*29 Since amendment by La. Acts 1997, No. 483, article 1915 has provided:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, including a summary judgment granted pursuant to Article 966(E).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, theories, or parties, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
C. If an appeal is taken from any judgment rendered under the provisions of this Article, the trial court shall retain jurisdiction to adjudicate the remaining issues in the case.
Prior to the 1997 amendments, article 1915 dealt with the problem of identifying immediately appealable partial final judgments by setting forth exclusive classes of such judgments. See Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993). The difference between the former approach and the post-amendment approach has been described as follows:
The new version of Article 1915, although still containing a list of partial adjudications, largely has abandoned the prior approach in favor of one closely paralleling Federal Rule of Civil Procedure 54(b). Under the federal approach, the immediate appealability of a partial final decision essentially is left to the discretion of the trial judge who knows the case and can balance competing factors. This approach allows greater flexibility to fit the particular case, but also allows for greater judge-to-judge differences in application, as long as the differences fall within the judges' broad discretion.
* * *
Presumably, the parallels between Article 1915 and Rule 54 indicate a legislative intent for courts to seek guidance from the federal provisions and jurisprudence. However, our courts' ability to do so is seriously undercut by discrepancies between state and federal law concerning the triggering of appellate *30 delays, the certification of a partial adjudication for immediate appeal, and the scope of a partial summary judgment. Because of the many questions raised by Act 483, this area of the law has been placed in a state of confusion.
Mark Tatum and William Norris, III, Summary Judgment and Partial Judgment in Louisiana: The State We're In, 59 La. L.Rev. 131 (1998).
This court's first opinion addressing questions raised by amendments to article 1915 was in Banks v. State Farm Ins. Co., 30,868 (La.App. 2 Cir. 3/5/98), 708 So.2d 523. In that case the parties agreed that the partial judgment was a "final judgment" in accordance with article 1915(B)(1), but the order of appeal made no express determination that there was no just reason for delay of an immediate appeal. We observed that the amendments to article 1915 were patterned after the provisions of Rule 54 of the Federal Rules of Civil Procedure, and both discussed and considered: (1) historic state and federal policies against piecemeal appeals; (2) the fact that the appealability of judgments has never been a matter controlled by the litigants in either state or federal court; and (3) the prohibition in federal courts against certification as a courtesy or accommodation to counsel. We concluded that the legislature did not intend for the parties, by agreement, to be able to create a final judgment for the purpose of an immediate appeal. We found support for our conclusion in the language of Article 1915(B) because, while paragraph (B)(1) allows a partial judgment to constitute a final judgment either by the agreement of the parties or by the determination and designation of the court, paragraph (B)(2) only allows a partial judgment to constitute a final judgment for the purpose of an immediate appeal in instances where there has been a determination and designationactions that paragraph (B)(1) assigns to the court and not to the parties.[1]
We also stated in Banks that the trial courts should give written reasons for a designation and determination (commonly referred to as "certification") in order to facilitate appellate review. Because there was no certification in Banks, we remanded the case for an express determination with written reasons of whether there was no just reason for delay of an immediate appeal. In choosing to remand rather than dismiss the appeal, we considered the fact that the change in procedure for appeals of partial judgments was a significant one, and that many lawyers and judges were not yet fully aware of how the procedures were to operate. Furthermore, from Banks until the present time, this court has followed a policy of remanding uncertified partial judgments to allow a brief period for the parties either to attempt to obtain certification or to show why certification is unnecessary. This policy has created an administrative burden on this court, and while the policy has not been required on our part, we have viewed it as the better course to take during a period of transition between the former approach of basing appealability of partial judgments on exclusive classes of partial judgments, and the current approach of weighing and balancing the factors in each individual case.
The jurisprudence does not reflect that other circuits currently are employing a similar policy. In Colson v. Louisiana State Racing Comm'n, 98-0944 (La.App. 4 Cir. 1/6/99), 726 So.2d 432, the partial judgment at issue neither had been certified by the trial court, nor had been agreed to as a final judgment by the parties. Concluding that the judgment was not appealable under Article 1915, the Fourth Circuit stated that the appeal must be dismissed. Nevertheless, the court proceeded to consider the merits of the partial summary judgment granted in that case pursuant to the court's supervisory jurisdiction. In contrast, in Chemical Release *31 at Bogalusa, 98 1122 (La.App. 1 Cir. 8/27/98), 718 So.2d 1015, the district court refused to certify the grant of a motion for partial summary judgment and a writ was taken to review the merits of the partial judgment; the First Circuit reasoned that to entertain by supervisory writ a judgment that was not a final judgment subject to immediate appeal under article 1915 would blatantly circumvent the spirit of that statute, causing the delay and judicial inefficiency which the statute obviously is designed to eliminate. Thus, the court refused to entertain the merits of the writ application, but in the interest of judicial efficiency exercised its supervisory jurisdiction to certify the partial summary judgment as a partial final judgment subject to an immediate appeal. The court then remanded the matter to the district court with instructions to grant a suspensive appeal.
Subsequently, in Jackson, supra, the Fourth Circuit chose to adopt the reasoning of the First Circuit in Chemical Release, but declined to certify on the appellate level; instead, the appeal was dismissed. Furthermore, in Guimmo v. Albarado, 98-242 (La.App. 5 Cir. 9/29/98), 720 So.2d 90, where the trial court had not certified a partial judgment, the Fifth Circuit concluded there was no final, appealable judgment and dismissed the matter for lack of appellate jurisdiction. However, in Basco v. Dorthy R. Racine Trucking, Inc., 97,2740 (La.App. 1 Cir. 12/28/98), 725 So.2d 606, the First Circuit converted the plaintiff's motion for appeal of an uncertified partial summary judgment into an application for supervisory relief.
We agree with other circuits that in the absence of certification there is no final, appealable judgment and that a jurisdictional defect exists when an appeal is taken from such a judgment. Moreover, although we have determined that such a defect can be cured either by subsequent certification[2] or by the rendition of subsequent judgment(s) adjudicating all the claims of all the parties,[3] in light of the fact that more than a year and a half has elapsed since the change in the law, and in light of the administrative burden that remand of uncertified partial judgments has placed upon us, we hereby announce a change in the policy of this circuit with regard to appeals of uncertified partial judgments. Rather than continue to follow the general policy of allowing additional time to obtain certification in instances where appeals are taken from uncertified partial judgments, we now adopt a general policy of dismissing such appeals without prejudice.
Furthermore, we agree that, generally speaking, it is improper to review the merits of an uncertified partial judgment pursuant to supervisory jurisdiction, without first considering whether or what the trial court has ruled on the propriety vel non of certification. To do so would take from the trial court the responsibility invested in it by the legislature of weighing and balancing the competing factors with which that court is more familiar and upon which it is to exercise its discretion in determining whether the interest of sound judicial administration will be better served through an immediate appeal. At the same time, our conclusion in no way restricts the plenary supervisory powers this court may exercise in its discretion in a proper case. Thus, when an appeal of an uncertified partial judgment comes before this court, we ordinarily will neither provide additional time for certification, nor exercise our supervisory jurisdiction to address the merits.
*32 This court also follows a policy of ordinarily reviewing a district court's certification decision under an abuse of discretion standard, but we will not hesitate to reverse a decision on certification in cases of abuse of discretion; while our proper role is not to reweigh the equities or reassess the facts, we must make sure that the conclusions derived from the trial court's weighings and assessments concerning certification are judicially sound and supported by the record. Caldwell Wholesale Co. v. Central Oil and Supply Co., 31,573 (La.App. 2 Cir. 1/26/99), 731 So.2d 305. Furthermore, while we stated in Banks, supra, that a trial court should give reasons for certification in order to facilitate appellate review of the certification decision, we conclude that the better policy when such written reasons are not given is to review the certification de novo as was done in Berman v. De Chazal, 98-81 (La. App. 5 Cir. 5/27/98), 717 So.2d 658, rather than to dismiss the appeal as occurred in Montgomery v. Gosserand, 98-1966 (La. App. 4 Cir. 12/23/98), 725 So.2d 92. Alternatively, in cases where the intent to certify is unclear or where the reasons for certification are lacking in some manner, we may elect to remand for written clarification or explanation.
Before addressing the particular factual situations presented by the above captioned matters, we revisit our conclusion in Banks, supra, that the legislature did not intend for the parties, by agreement, to be able to create a final judgment for the purpose of an immediate appeal. We do so to reaffirm that conclusion in light of contrary conclusions of the Fourth Circuit in Succession of Toncrey, 98-2342 (La. App. 4 Cir. 12/9/98), 725 So.2d 59, reaffirmed in Jackson, supra. In Toncrey, the trial court had designated the judgment as a final judgment pursuant to article 1915 after an express determination that there was no just reason for delaying an appeal. The trial court also had indicated that its certification was in accordance with the express stipulation of the parties. The appellate court questioned whether the trial court's statement of no just reason for delay was alone sufficient. On the other hand, the court stated, "it seems clear that the agreement of the parties is sufficient."
The court expressly disagreed with our decision in Banks, stating that we effectively read out of the law the language concerning agreement of the parties. In the Toncrey court's view, the effect of our decision in Banks was to create a "meaningless" class of final unappealable judgments. The court also stated that our legislature acted within its authority when it expanded the class of final, appealable judgments in article 1915(B), and that expanding the class of partial judgments considered to be final is consistent with reading the amendments to summary judgment law "in a way that tends to effectuate the effectiveness of the summary judgment procedure." At the same time, the court shared our concern "for what appears to have a great potential for mischief in the managing of appellate dockets[.]"
Although we have respect for the contrary opinion expressed in Toncrey, we are not convinced by that opinion's reasoning that our legislature intended such a novel and problematic result. First, we view what appears to be the great expansion of the scope of summary judgment as all the more reason for placing the certification decision with the courts rather than with the parties in light of the historic state and federal policies against piecemeal appeals as discussed in Banks. Allowing the parties to obtain summary judgment on issues that have the potential to shorten litigation and/or encourage settlements is desirable, but giving the parties the power to demand immediate review of any and every partial judgment, along with the attendant delays, inefficiency, taxing of judicial resources, and retarding of appeals of complete final judgments, can create "intolerable problems."[4]
*33 Second, we do not view our decision in Banks as creating a "meaningless" class of final unappealable judgments. Even before the amendment to article 1915, a class of partial final judgments was not immediately appealable; the class consisted of partial judgments on the merits that did not appear on the exclusive list of former article 1915.[5] In discussing the review of partial final judgments not immediately appealable, the Louisiana Supreme Court in Subaru, supra, observed that there are some cases in which the litigants and courts may desire immediate review of a partial judgment, as when the legal issue that is the subject of the partial judgment is the only point preventing compromise of the case. In such cases, the court noted that one or more of the parties could apply for supervisory writs, indicating that immediate review was justified because resolution would likely terminate the litigation. Additionally, the court stated:
Indeed, the trial judge by per curiam may verify that an immediate review may materially advance the termination of the litigation, similar to the way a federal trial judge expresses his or her determination that there is no just reason for delay when certifying a matter for entry of judgment under Rule 54(b).
The discussion in Subaru not only shows that our law has long recognized that not all partial final judgments should be immediately appealable, but also shows that partial judgments could be immediately reviewed upon a showing that resolution of the issue likely would terminate the litigation.[6]
Moreover, the notable parallel between the language of Subaru and the current procedural scheme for review of partial judgments suggests what the legislature may mean by "final judgment" in the current version of article 1915. Rather than construing the article to allow certification by the litigants, we cite an alternative interpretation:
Granting that certification by the litigants is a bad idea, what reasonable interpretation can be given to the language concerning "final judgment" by agreement of the parties? One interpretation could recognize the parties' ability to agree that future litigation will turn on appellate resolution of a partial adjudication. For example, a trial court might be unwilling to certify a partial adjudication solely declaring the existence of insurance coverage. Such an adjudication would not require any payment to be made, and the need for appellate review could disappear if the insured was found to have no liability. However, the parties all might agree to a settlement, the terms of which depended on a definitive resolution of the coverage question. This agreement would make the trial court's judgment "final" to the extent that no further decisions would be necessary in the trial court. Although certification by the trial court still should be employed, a trial court *34 could abuse its discretion by failing to certify in such instances.
Mark Tatum & William Norris, III, op. cit.
Rather than reading out of article 1915 the language concerning agreement of the parties, we conclude that our interpretation in Banks gives meaning to all parts of the article. On the other hand, to allow the parties to agree to a final judgment for the purpose of an immediate appeal, rather than to require a determination and designation by the court, would ignore the plain wording of article 1915(B)(2) which states in pertinent part:
In the absence of such a determination and designation any order or decision which adjudicates fewer than all claims or the rights of fewer than all the parties, * * * shall not constitute a final judgment for the purpose of an immediate appeal.
This passage contains the article's only specific reference to an immediate appeal, and it dovetails with that portion of the preceding sentence allowing a designation of a final judgment by the court after an express determination that there is no just reason for delay of an immediate appeal. Accordingly, to read article 1915 as allowing certification by the parties is to conclude that the legislature inadvertently left language out of article 1915(B)(2). Our reading in Banks does not require such a conclusion.
Finally, we are reluctant to interpret article 1915 to allow certification by the parties because such an interpretation necessarily would attribute an intent to the legislature that would be constitutionally suspect. As previously discussed, the former provisions of article 1915 attempted to solve the important procedural problem of determining which partial judgments are immediately appealable by listing exclusive classes of such judgments. Without question, the legislature has the authority to establish such classes of judgments; in so doing, the legislature weighs and balances the competing factors by creating the classes, and debates the critical policy considerations with input from the Louisiana State Law Institute. Thus, the interest of sound judicial administration is protected even though the approach does not involve a case-by-case weighing and balancing of competing factors. However, while one may argue that under the current approach the legislature has done nothing more than establish another class of such judgments (those from which the parties desire an immediate appeal), a significant argument to the contrary can be made based upon the constitutional doctrine of separation of powers.
As stated by the Louisiana Supreme Court in Safety Net for Abused Persons v. Segura, 96-1978 (La.4/8/97), 692 So.2d 1038:
The separation of powers doctrine is found in Article II of the Louisiana Constitution. La. Const. Art. II, § 2 prohibits any one of the three branches of government from exercising power belonging to another branch. La. Const. Art. II, §§ 1 and 2 establish the basis for the recognition of inherent powers in the judicial branch which the legislative and the executive branches cannot abridge. * * * Under the doctrine of inherent powers, courts have the power (other than those powers expressly enumerated in the constitution and the statutes) to do all things reasonably necessary for the exercise of their functions as courts. The inherent powers of the judicial branch necessarily encompass the authority to administer the business of courts. * * *
We recognize that crystal clear distinctions among the branches of government are not always possible or desirable. The practical aspects of governing require flexibility and make some overlapping inevitable. Consequently, this court will cooperate with the legislative and executive branches of government unless it interferes with the effective administration of justice. With respect to legislation that has an impact on the judicial system, this court will uphold *35 legislative acts passed in aid of the judiciary's inherent power, but will strike down statutes which tend to impede or frustrate its authority. (Citations omitted.)
In State, In the Interest of A.C., 93-1125 (La.1/27/94), 643 So.2d 719, the Supreme Court concluded that the legislature clearly infringed upon the independence of the judiciary in making credibility determinations of witnesses in matters that were properly before the courts. Although the court emphasized that the doctrine of inherent powers is not without limit and should be used reluctantly, after examining authorities on the nature and extent of a court's inherent powers, the court stated:
From these authorities, it is apparent that the core function of the judiciary is the administration of justice between litigants. A proper execution of that function requires a court to arrive at the truthfulness of facts presented before it, and courts are vested with certain inherent powers necessary to achieve this function. It follows that one of the inherent powers is the trier of fact's "inherent power and duty to weigh evidence and judge the credibility of witnesses," to assign various weights to testimony before the court, and then, based upon these determinations, render a judgment that satisfies justice. (Citation omitted.)
The inherent judicial power of courts is not limited to use in making a complete determination of the merits. For example, after a defendant has been tried and found guilty, a judge ordinarily is called upon to exercise some or all of this power in determining the proper sentence. Not surprisingly, our Supreme Court held that the power to sentence is one of the traditional, inherent, and exclusive powers of the judiciary. State v. LeCompte, 406 So.2d 1300 (La.1981). No less surprisingly, in Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829 (1943), the court rejected a statute making it the mandatory duty of a judge to issue a restraining order upon the mere presentation of two affidavits that a business establishment was being used as a gambling house. The court concluded that the statute violated the principle that a restraining order will not be granted where it may operate oppressively or contrary to justice, and that the statute also violated the principle that where there is power to abate a nuisance, the abatement must be limited so that no unnecessary injury is inflicted. The court stated that these were matters which should be determined by the judge "exercising his sound discretion, and not depend upon the whims, caprices or misinformation of private persons." To do otherwise, said the court, would imply that the judge was nothing more than "a rubber stamp" whose only duty was "to place a stamp of approval upon the demand of private parties, irrespective of whether or not he may consider that the demand is well founded."
Article 1915(B) provides an approach to the immediate appealability of partial judgments that turns upon a case-by-case determination of facts, the weighing and balancing of pertinent factors, and the drawing of conclusions based upon that determination and weighing. Furthermore, the conclusions are drawn in, and have a direct impact on the interest of sound judicial administration. Thus, the question is whether this case-by-case determination is an inherently judicial function which cannot be delegated to private litigants.
We need not answer this constitutional question because we presume the legislature acted in a constitutional manner, and we interpret article 1915(B) in a way that does not cast doubt upon its constitutionality. Given a choice between readings that are plainly constitutional and suspect, we have chosen the former.
Turning to the cases sub judice, we observe that in Shoemaker the trial court granted a partial summary judgment but was not asked to designate, and did not designate, the partial judgment as final for purpose of an immediate appeal. Because *36 such a judgment is not appealable, and in accordance with the policy announced herein, we hereby dismiss the appeal in Shoemaker without prejudice.
Similarly, Hunter presents a partial judgment dismissing part of the plaintiff's claims against defendant, Tensas Nursing Home. We previously gave additional time for the parties to obtain certification or show why certification was unnecessary. However, the only response was a copy of a letter from counsel for the nursing home to the trial court requesting certification with written reasons, and a copy of written reasons for judgment that neither certified the partial judgment nor attempted to assess whether or not there was any just reason for delay of an immediate appeal. Instead, the reasons for judgment simply explained why the court ruled as it did on a motion for summary judgment. Because this judgment is not appealable, the appeal is hereby dismissed without prejudice.
Finally, in Succession of Grimmett, we also gave additional time for the parties to obtain certification or show cause why certification was unnecessary. In response, we received a letter from counsel for appellant stating that counsel had written to the trial court requesting certification and had called to inquire about the matter. More than a month has elapsed from the expiration of the time allowed by this court in its order of December 19, 1998. The judgment remains uncertified and thus unappealable. Accordingly, we dismiss the appeal in Succession of Grimmett without prejudice.
APPEALS DISMISSED WITHOUT PREJUDICE.
NOTES
[1] See, infra, our discussion revisiting our conclusion in Banks.
[2] Compare by analogy Overmier v. Traylor, 475 So.2d 1094 (1985), holding that although an appeal is premature prior to the signing of a final judgment, subsequent signing cures the defect.
[3] See Carroll v. State Farm Fire and Cas., 31,652 (La.App. 2 Cir. 8/6/98), 715 So.2d 771.
[4] See Everything on Wheels Subaru, supra, stating that if all partial final judgments were immediately appealable, there would be "intolerable problems of multiple appeals and piecemeal litigation."
[5] Under La. C.C.P. art. 1841, a judgment that determines the merits in whole or in part is a final judgment. Because not all partial final judgments were immediately appealable under our former law, the definition of "final" in article 1841 was not synonymous with "appealable" although, in the absence of irreparable injury, a judgment must be "final" to be appealable.
[6] The federal courts also reject the immediate appeal of all partial final judgments. As stated by the United States Supreme Court in Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980): "Not all final judgments on individuals claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."

Of course, even though some partial judgments are not immediately appealable, they are reviewable pursuant to an appeal taken from the final judgment on the remaining unresolved claims.